## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| RICHARD B. SOUTHMAYD, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  3:04-CV-215 |
| | ) | (Phillips) |
| APRIA HEALTHCARE, INC., | ) | |
|     Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Richard Southmayd, a 58-year old male, brings this action for age discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. § *621 et* seq. and the Tennessee Human Rights Act, Tenn. Code Anno. § 4-21-101 *et seq.,* and for retaliatory discharge under the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 and Tennessee common law.  Defendant Apria Healthcare, Inc., has moved for summary judgment with regard to all of plaintiff's causes of action on the grounds that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law.   For the reasons stated below, defendant's motion for summary judgment will be granted in part and denied in part.

## I.  Background

Richard Southmayd was hired by Apria Healthcare, Inc., on May 8, 2000, as the branch manager of its Knoxville location.  At the time of his hire, Southmayd was 55

years old.  Apria is a home medical equipment/respiratory therapy industry. At the time of Southmayd's hire in May 2000, there was only one local branch for the East Tennessee area, the Knoxville branch, which included the Knoxville, Harriman, and Jefferson City locations.  In October 2002, Apria acquired Tennessee Home Respiratory (THR), another home medical equipment company in Knoxville.  Steve Miracle worked for THR and became an Apria employee after the acquisition.  Following the acquisition, Apria made the decision to separately operate the THR and Apria branches.  Southmayd continued to be the Knoxville branch manager for Apria's locations in Knoxville, Harriman, and Jefferson City; and  Miracle managed the THR branches in the Knoxville area.

In November 2002, Thomas Bradley, regional operations manager, asked Southmayd to consider transferring to Apria's larger Nashville branch to serve as its branch manager. Bradley offered Southmayd the job because the Nashville branch needed a good leader and Bradley believed that Southmayd had the capabilities to lead that larger branch. Southmayd chose to remain in his current position of Knoxville branch manager due to family reasons.

On December 12, 2002, Southmayd informed Karyl Scott, regional clinical director for Apria, that unlicensed delivery personnel from the former THR had installed certain oxygen conserving equipment on a patient and performed pulse oximetry without the necessary prescriptions from a physician.  Southmayd believed these actions were illegal. Pulse oximetry is performed to confirm that oxygen saturations remain at viable levels while breathing through the conserving device.  The failure to properly install oxygen

2

conserving equipment and/or properly perform pulse oximetry could endanger the patient's health and life. Southmayd's concerns were relayed to Bradley, who relayed them to his superior, Lowell McKinster.

In January 2003, McKinster decided to combine the operations of THR and Apria in the Knoxville market. In March 2003, Miracle was promoted to Knoxville branch manager and Southmayd was transferred to the Harriman branch as manager. Compared to the Knoxville branch, Southmayd's new Harriman branch manager position involved a smaller territory and market, involved fewer responsibilities and employees to supervise, and resulted in Southmayd being eligible for and receiving smaller raises and bonuses.

At the time of Southmayd's transfer to the Harriman branch, Miracle (age 36) had been employed by Apria for less than six months. Southmayd (age 58) had been employed by Apria for over three years. Southmayd had twenty-two years experience in the home medical equipment industry, while Miracle only had six years experience in the industry. Yet, Apria chose Miracle to be the manager of the larger Knoxville branch.

In June 2003, Apria's mid-year review of operations indicated that revenue growth for the region was not meeting expectations. McKinster and other regional managers were notified that a reduction in force (RIF) would be necessary to cut operational expenses. On July 16, McKinster decided to eliminate one of the two branch managers in the Knoxville area. It was decided to retain Miracle as branch manager and to terminate Southmayd. Southmayd was not informed of this decision until August 15

3

when McKinster met with him and informed him that his employment at Apria was being terminated as part of the RIF. That same day, Apria terminated 17 employees in the Southeast Division as part of the RIF.

On August 6, 2003, a few days prior to Southmayd's termination, Southmayd's branch received a referral from the Knoxville branch to perform activities that Southmayd believed violated Medicare rules. Southmayd's branch was asked to provide services to a patient who did not meet Medicare criteria and whose insurance was not within Apria's network. Southmayd refused to provide the services and instead, referred the patient to another company. On August 8, 2003, Southmayd reported this incident to McKinster.

On August 13, 2003, Southmayd was contacted and questioned by a region revenue manager of Apria regarding this incident. On August 15, 2003, Southmayd's employment was terminated by Apria as part of the RIF. Southmayd was the only branch manager in Apria's southern region to be terminated due to the RIF. He was 58 years old at the time of his termination. During Southmayd's employment with Apria, he received satisfactory performance reviews and was adequately performing his job at the time he was terminated. However, in 2002, Southmayd had two performance problems that resulted in disciplinary action. In September 2002, Southmayd violated Apria's gift policy when he used Apria funds to purchase a CD/music player to give away at a customer appreciation day in the Harriman branch. In addition, during calendar year 2002, the Harriman branch

4

was penalized $20,000 on its profit and loss statement because Southmayd failed to accommodate an employee with a workers' compensation injury.

After Southmayd was terminated, Miracle performed Southmayd's job duties at the Harriman branch. Miracle remained in this role until April 2004 when he was promoted to the position of area operations manager. Following the acquisition of another local competitor that increased revenues in the Knoxville area, Apria decided to separate the Harriman and Oak Ridge locations from Knoxville and hire a separate branch manager for each location. Southmayd submitted his resumé and application for both the Knoxville and Harriman positions. Southmayd contends he was qualified for these open branch manager positions but Apria failed or refused to contact, interview or rehire him for the positions, even though he had more experience, more education, and more tenure with Apria compared to the candidates chosen for the branch manager positions. Miracle was the decision-maker for these open positions. He testified he did not give Southmayd any consideration for the positions, despite the fact that Apria had a policy that gave preference to laid-off employees for open positions. Southmayd was older (age 60) than the candidates chosen for the branch manager positions, none of which were over the age of 40.

Southmayd timely filed a charge of discrimination with the Equal Employment Opportunity Commission and the Tennessee Human Rights Commission against Apria alleging age discrimination and retaliation, received a notice of right to sue, and timely filed his lawsuit. Southmayd's complaint alleges that Apria fired him and then refused to rehire

5

him because of his age in violation of the ADEA and the THRA. The complaint further states that Apria's failure or refusal to rehire him subsequent to his termination was in retaliation for filing the charge of discrimination and/or this lawsuit. Southmayd has also sued under the Tennessee Public Protection Act and under Tennessee common law for retaliatory discharge.

Defendant Apria has moved for summary judgment with regard to all of Southmayd's causes of action on the grounds that there are no genuine issues of material fact and Apria is entitled to judgment as a matter of law. Specifically, Apria asserts that Southmayd cannot show that his termination and Apria's failure to rehire him were based upon his age; and Southmayd cannot show that he was terminated and refused future employment in retaliation for his filing a charge of discrimination and/or lawsuit against Apria.

## II.  Standard of Review

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v.*

6

*Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

## III. Analysis

### A. Age Discrimination

In his first cause of action, Southmayd alleges that Apria violated the ADEA and THRA by discriminating against him on the basis of age. Tennessee courts have held that the THRA is to be interpreted coextensively with the ADEA. *Parker v. Warren County Utility Dist.* 2 S.W.3d 170, 172 (Tenn. 1999). Southmayd first asserts that Apria discriminated against him on the basis of age when it terminated his employment as part of the RIF. Southmayd further asserts that Apria discriminated against him on the basis of age by failing to rehire him for the open branch manager positions subsequent to his termination.

Under the ADEA, an employer is prohibited from discharging older employees on the basis of their age. 29 U.S.C. § 623(a). An employee may establish a claim under

7

the ADEA by offering either direct or circumstantial evidence of age discrimination. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). There are thus two alternative ways for Southmayd to meet his evidentiary burden to prove that he was terminated in violation of the ADEA. Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999). Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow the factfinder to draw a reasonable inference that discrimination occurred. *Kline,* 128 F.3d at 348.

The traditional approach to any employment discrimination claim brought under federal law was articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under that approach, a plaintiff can establish a prima facie case of unlawful discrimination by showing that (1) he is a member of the protected class; (2) he is qualified for the position in question; (3) he suffered some adverse employment action; and (4) he was replaced by someone outside of the protected class. *Wilkins .v Eaton Corp.,* 790 F.2d 515, 520 (6th Cir. 1986). However, the Sixth Circuit has recognized that a literal application of the *McDonnell Douglas* test is not appropriate in the context of ADEA cases. *See Simpson v. Midland Ross Corp.,* 823 F.2d 937, 940 (6th Cir. 1987) (stating that the Sixth Circuit has been unwilling to "follow blindly the four-part *McDonnell Douglas* formula in ADEA cases"); *MdDonell v. Union Camp Corp.,* 898 F.2d 1155, 1161 (stating that rigid adherence to *McDonell Douglas* should be discouraged in age discrimination cases). Rather, the Sixth Circuit has determined that age discrimination cases should be decided

8

on a case-by-case basis to allow federal courts to be "attentive to the realities of the business world." *Simpson,* 823 F.2d at 941.

As modified for age discrimination claims, the *McDonnell Douglas* test requires  plaintiff to first establish a *prima facie* case of discrimination on the basis of age. To do so, the plaintiff must show that (1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person. *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 69 (6th Cir. 1982).  Where, as here, the allegations of discrimination arise from a work force reduction, the plaintiff will be unable to show that he was replaced by a younger person.  Instead, Sixth Circuit law requires the plaintiff to offer "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons" as the fourth element of a plaintiff's *prima facie* case.  *Phelps v. Yale Security,* 986 F.2d 1020, 1023 (6th Cir. 1993); *Barnes v. GenCorp., Inc.,* 896 F.2d 1457, 1465 (6th Cir. 1990).

Once plaintiff has established a *prima facie* case of age discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *Barnes,* 896 F.2d at 1464.  If the defendant successfully discharges this burden, the plaintiff is then given the opportunity to prove by a preponderance of the evidence that the legitimate, nondiscriminatory reasons articulated were only a pretext for discrimination.  *Id.*  Notwithstanding this burden-shifting approach to age discrimination

claims, the plaintiff retains the ultimate burden of persuasion throughout the litigation. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382 (6th Cir. 1993).

Plaintiff can establish pretext in three ways (1) by showing that the defendant's reasons have no basis in fact; (2) if they have a basis in fact, by showing that defendant's reasons were not the actual factors motivating the adverse employment action; or (3) if the defendant's reasons were factors, by showing that they were jointly insufficient to motivate the adverse employment action. *Chappell v. GTE Products Corp.,* 803 F.2d 261, 266 (6th Cir. 1986). The first type of pretextual showing has been described as "easily recognizable" and consists of evidence that the proffered bases for the adverse employment action never happened. *Manzer,* 29 F.3d at 1084. The third type of pretextual showing has also been characterized as "easily recognizable" and usually consists of evidence that other employees, especially those outside of the protected class, engaged in the same conduct as that of the plaintiff, but suffered no adverse employment action. *Id.* These two types of showings constitute direct attacks upon the credibility of the defendant's nondiscriminatory reasons for its action and, if successful, can provide the evidentiary basis for the "suspicion of mendacity" described by the Supreme Court in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993). *Id.*

In the second type of pretextual showing, the plaintiff admits the factual basis of the defendant's articulated reasons and admits that such conduct could warrant the adverse employment action. *Id.* However, the plaintiff argues that the weight of the

circumstantial evidence makes it "more likely than not" that the employer's explanation is a pretext for discrimination.  *Id.*

Southmayd was over forty years old, and thus a member of the protected class.  He also suffered an adverse employment action.  There is no dispute that Southmayd was qualified for the position of branch manager.  However, the parties dispute whether he was discriminated against based upon his age.  Southmayd has set forth two separate claims of age discrimination by Apria: (1) Apria's termination of his employment; and (2) Apria's failure/refusal to rehire him after his termination.    Southmayd has abandoned his claims for age discrimination arising from  his transfer to the Harriman branch in March 2003, and his claim relating to the pay disparity between Southmayd and Miracle.

### 1.  Termination on the Basis of Age

Apria concedes that Southmayd can establish the first three elements of the *prima facie* case; however, Apria argues that Southmayd has failed to present any evidence that it singled him out for discharge for impermissible reasons.

Southmayd has not offered any direct evidence that he was singled out for the RIF based upon his age.  However, he offers circumstantial evidence that McKinster (age 39) and Brian Ego (age 36) selected Miracle (age 36) to keep the job that Southmayd had previously filled for three years.  Southmayd also points out that the branch manager position from which he was terminated remained covered by Miracle for a few months, and

then was reopened by Apria and filled by a younger individual. Southmayd was never considered by Apria for the reopened position.

Plaintiff argues that even though he was qualified to manage all of the Apria branches in the Knoxville area, Apria decided to terminate him and keep Miracle, who was only 36 years old, to be branch manager for these locations. However, in *Brocklehurst v. PPG Industries, Inc.,* 123 F.3d 890, 896 (6th Cir. 1997), the Sixth Circuit held that because qualified employees are going to be discharged in a reduction in force, "the decision to discharge a qualified, older employee is not inherently suspicious." Thus, under Sixth Circuit law, evidence that a younger employee was kept in a position for which plaintiff was qualified is not sufficient to create an inference of age discrimination in a reduction in force situation. *Id.; Barnes,* 896 F.2d at 1465.

Southmayd also asserts that he was better qualified than Miracle at the time of the RIF. Southmayd testified that he "was clearly the superior branch manager from an experience standpoint and from an educational standpoint." However, a plaintiff's conclusory opinion that he was better qualified than another employee who was retained in a RIF is insufficient to establish a *prima facie* case of age discrimination. *Messner v. Lockheed Martin Energy Systems, Inc.,* 126 F.Supp.2d 502, 513-14 (E.D.Tenn. 2000). Instead, it is the manager's motivation that is the key factor, not the employee's perception about his abilities or skills. *Shapira v. Lockheed Martin Corp.,* 88 F.Supp.2d 813, 829 (E.D.Tenn. 1998). McKinster testified that the decision to retain Miracle was based on job performance and Apria's desire to keep all of the business that Apria had acquired through

12

the THR acquisition.[1]  In addition, Miracle was rated higher on the most recent performance appraisal than Southmayd.  Southmayd's overall performance rating was a 3.05, while Miracle's overall rating was a 3.24.

The court must also consider whether there is any statistical evidence tending to show that Southmayd was singled out because of his age.  The record shows that Apria terminated 17 employees on August 15, 2003, as part of the RIF.  Although Southmayd was the oldest of the 17 employees terminated on that date, the  evidence reveals that 11 of the 17 employees (65%) terminated were under the age of 40.  In *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365 (6th Cir. 1999), the Sixth Circuit analyzed similar statistics in determining whether the plaintiff could establish a *prima facie* case of age discrimination.  In *Godfredson*, the statistics showed that although the plaintiff was the oldest person discharged in the RIF, more than half of the other 18 employees discharged were less than 40 years old.  *Id.* at 373.  Based on this statistical evidence, the Sixth Circuit held that the plaintiff failed to satisfy the fourth element of the *prima facie* case of age discrimination in a RIF situation.  *Id.*  The court finds the same result here, the statistical evidence fails to establish that Apria singled Southmayd out for termination in the RIF because of his age.  Thus, Southmayd has failed to establish a *prima facie* case of age discrimination with regard to the termination of his employment.

---

[1]  Apria spent approximately $5 million in October 2002 to acquire THR, a business operated by Miracle.

13

Even assuming that Southmayd could establish a *prima facie* case of age discrimination with regard to his discharge, Apria has established a legitimate, nondiscriminatory reason for terminating him.  The Sixth Circuit has repeatedly held that an employer can establish a legitimate, nondiscriminatory reason for terminating a plaintiff by showing that the termination was part of a RIF.  *See Ercegovich v. Goodyear Tire & Rubber Co.,*154 F.3d, 344, 350 (6th Cir. 1998)*; Barnes*, 896 F.2d at 1468; *Messner,* 126 F.Supp2d at 520.  The record shows that Bob Rickman, Apria's Southeast Division Vice President of Operations, initiated a reduction in force in July 2003 because operational expenses within the division were too high.  McKinster determined that he could eliminate one of the two branch managers in the Knoxville area since these branches had previously been managed by only one branch manager.  McKinster, after consulting with Brian Ego, Apria's Southeast Division Human Resource Manager, decided that the best business decision was to keep Miracle as the branch manager and to terminate Southmayd.  This decision was based on the job performance of Miracle and Southmayd prior to the RIF and Apria's desire to keep Miracle so as not to lose all of the business that had been acquired through the THR acquisition.  Ego testified that Apria needed to keep Miracle employed or it would risk losing all of the revenue that had been acquired through THR.  Based upon the record, the court finds that Apria has established a legitimate, nondiscriminatory reason for Southmayd's termination.

Under *McDonnell Douglas,* the burden shifts to Southmayd to prove that Apria's articulated reason is mere pretext.  Southmayd points to the fact that he was terminated in August 2003, yet Apria decided in Septemberl 2004 that it needed a second

14

manager in the Knoxville area, and when the position was filled, it was by a younger employee. Southmayd also notes that one of the factors given by Apria for retaining Miracle was that Miracle had started a home respiratory company. However, Southmayd had himself also started a home respiratory company. Southmayd contends that he had more length of service at Apria than Miracle, which should have been considered in accordance with Apria's RIF policy in effect at the time of his termination.

Southmayd has challenged Apria's decision to terminate his employment on the basis that he was better qualified than Miracle. However, this court, in *Messner*, found that a plaintiff's conclusory opinion that he was better qualified than another employee who was retained in a RIF is insufficient to establish a *prima facie* case of age discrimination:

> In attacking an employer's explanation for the discharge, a plaintiff may not rely upon "mere personal beliefs, conjecture and speculation." *Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 (6th Cir. 1986). Nor can a plaintiff prove pretext merely by asserting that a better business decision could have been made. *See Blackwell v. Sun Elec. Corp.,* 696 F.2d 1176, 1179 (6th Cir. 1983) ("the ADEA was designed to protect older workers from arbitrary classifications on the basis of age, not to restrict the employer's rights to make *bona fide* business decisions.") A plaintiff cannot show pretext by merely claiming that he was "better qualified" than younger employees who were retained, as an employee's evaluation of his own performance or qualification is irrelevant. *Wrenn v. Gould,* 808 F.2d 493, 502 (6th Cir. 1987). In order to show pretext with regard to the relative qualifications between a plaintiff and any other employee, the plaintiff must demonstrate that defendant's business judgment "was so ridden with error that defendant could not have honestly relied upon it." *Lieberman v. Gant,* 630 F.2d 60, 65 (2nd Cir. 1980); *see also, In re: Lewis,* 845 F.2d 624, 633 (6th Cir. 1988).

The evidence in this case shows that experience and length of service were not the bases for Apria's decision to keep Miracle instead of Southmayd. Rather, the decision was based on job performance and the desire to keep Miracle so as not to lose the business that Apria had acquired through the THR acquisition. The court cannot find, as a matter of law, that Apria's business judgment was so ridden with error that the company could not have honestly relied upon those reasons in selecting Southmayd for the RIF. Thus, Southmayd has failed to show that Apria's legitimate non-discriminatory reasons for his termination were pretextual, and his failure to rehire claim based on age discrimination will be dismissed.

### 2. Failure to Rehire on the Basis of Age

Southmayd next claims that Apria discriminated against him on the basis of age by failing to rehire him for the open branch manager positions subsequent to his termination. Apria asserts it is entitled to summary judgment because Southmayd has not filed a charge of discrimination with regard to his failure to rehire claim.

Prior to bringing a claim under the ADEA, the plaintiff must exhaust his administrative remedies with the EEOC by timely filing a charge of discrimination within 300 days of the alleged discriminatory act before commencing an action in federal court. 29 U.S.C. § 626(d). Federal courts do not have subject matter jurisdiction to hear claims unless the claimant files the claim in an EEOC charge or the claim can reasonably be

expected to grow out of the EEOC charge. *Strouss v. Mich. Dept of Corr.,* 250 F.3d 336, 342 (6th Cir. 2001). Failure to exhaust administrative remedies is an appropriate basis for dismissal of an ADEA action. *See Oscar Mayer & Co. V. Evans,* 441 U.S. 750, 753 (1979).

Southmayd filed his charge of discrimination with the THRC and the EEOC on November 5, 2003. Southmayd requested and received a right to sue notice from the EEOC on February 12, 2004. On September 12, 2004, seven months after his right to sue notice was issued, Southmayd submitted a cover letter and resume to Apria applying for the reopened position of branch manager in Knoxville. Southmayd did not file a charge of age discrimination relating to Apria's failure to rehire him. Since the investigation of his previous charge of discrimination had already been completed by the EEOC at the time it issued a right to sue notice, Southmayd's claim for failure to rehire cannot reasonably be expected to grow out of his prior charge of discrimination. *See Piette v. CSX Transportation, Inc.,* 1999 WL 486413, 6th Cir. July 2, 1999 (holding that a discriminatory termination claim could not reasonably be expected to grow out of a prior charge where the investigation into the prior charge was complete prior to the termination). Thus, Southmayd's claim that Apria discriminated against him on the basis of age when it failed to rehire him in September 2004 must be dismissed for lack of subject matter jurisdiction.

The record in this case is devoid of evidence permitting an inference that age was a determining factor in Apria's decision to terminate Southmayd. Moreover, because Southmayd failed to timely file a charge of age discrimination relating to his application for re-employment in September 2004, this court lacks subject matter jurisdiction to hear his

claim. Accordingly, Apria is entitled to summary judgment on Southmayd's claims for age discrimination under the ADEA and the THRA.

## B. Retaliation

Southmayd next alleges that under the ADEA and the THRA, Apria has committed unlawful retaliation by terminating his employment and by failing to consider him for re-employment. Retaliation claims under the ADEA and the THRA are analyzed similarly to Title VII cases. *See Penny v. United Parcel Service,* 128 F.3d 408, 417 (6th Cir. 1997) ("Retaliation claims are treated the same whether brought under the ADEA or Title VII."); *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 n. 5 (5th Cir. 1992) (indicating that cases interpreting Title VII are frequently relied upon in interpreting the ADEA); *Steffes v. Stepan Co.,* 144 F.3d 10170, 1074 (7th Cir. 1998) (stating that elements of retaliation claim are identical under Title VII and ADEA); *Bruce v. Western Auto Supply Co.,* 669 S.W.2d 95, 97 (Tenn.App. 1984) (stating that federal law interpreting Title VII is controlling for purposes of interpreting the THRA). Southmayd has also sued Apria for retaliatory discharge under both the Tennessee Public Protection Act (TPPA) and Tennessee common law.

In order to state a claim for retaliation under the statutes, Southmayd must show that (1) he engaged in protected activity; (2) his exercise of protected rights was known to Apria; (3) Apria thereafter took adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *See EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir. 1997); *Kocsis v. Multi-Care*

*Mgmt, Inc.,* 97 F.3d 876, 886 (6th Cir. 1996); *Austin v. Shelby Co. Govt,* 3 S.W.3d 474, 480 (Tenn.App. 1999).

    1.  <u>Retaliatory Discharge</u>

    Southmayd asserts that he was chosen over Miracle for the RIF because he had complained about activities of THR that he believed to be illegal or improper. Southmayd testifed that on December 12, 2002, he reported to Karyl Scott that unlicensed delivery personnel from THR had installed certain oxygen conserving equipment on a patient and performed pulse oximetry without the necessary prescription from a physician. Southmayd also discussed the matter with his superior Bradley. The decision to consolidate management of the Knoxville branches of THR and Apria and to transfer Southmayd to the smaller Harriman branch occurred in early January 2003.

    Secondly, a few days prior to Southmayd's termination, the Harriman branch received a referral from the Knoxville branch to provide services to a patient who did not meet Medicare criteria and whose insurance was not within Apria's network. Southmayd refused to provide the services and instead, referred the patient to another company. Southmayd reported this incident to McKinster on August 8, 2003, and discussed it with a region revenue manager of Apria on August 13, 2003. On August 15, 2003, Southmayd was notified that his employment was terminated as part of the RIF.

    Southmayd's argument is based on the temporal proximity between his protected activity and his termination. To establish a causal connection between his

19

protected activity and the adverse employment action, Southmayd must present evidence "sufficient to raise the inference that his protected activity was the likely reason for the adverse action."  *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir. 1997). "Temporal proximity alone, without additional evidence of a retaliatory animus, will not suffice to support a finding of a causal connection."  *Hafford v. Seidner,* 183, F.3d 506, 516 (6th Cir. 1999).

Apria's termination of Southmayd closely followed his protected activity, giving the impression of retaliation.  *See Moon v. Transp. Drivers, Inc.,* 836 F.2d 226, 230 (6th Cir. 1987) (finding that the fact that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation).  However, temporal proximity alone, without additional evidence of a retaliatory animus will not suffice to support a finding of a causal connection.  The record shows that Southmayd's first alleged protected activity took place on December 12, 2002, more than eight months before he was terminated.  In *Nguyen v. City of Cleveland,* the Sixth Circuit held that a plaintiff cannot establish a causal link based on proximity of time where the adverse employment action took place more than six months after the alleged protected activity.  *Nguyen,* 229 F.3d 559, 556-67 (6th Cir. 2000); *see also Cooper v. City of North Olmstead,* 795 F.2d 1265, 1272 (6th Cir. 1986) (holding that the mere fact that plaintiff was discharged four months after protected activity is insufficient to support a claim of retaliation).

Southmayd's second alleged protected activity took place on August 8, 2003, one week before he was terminated.  However, the record shows that Southmayd's

termination was contemplated and underway before he engaged in the alleged protected activity. On July 16, 2003, McKinster decided to eliminate Southmayd's position in order to cut operational expenses, although Southmayd was not informed of the decision until August 15, 2003. So, at the time Southmayd complained about the Medicare referral on August 6 and he was questioned by a region manager of Apria regarding the incident on August 13, the decision had already been made to eliminate his position. Southmayd has failed to present "more than a scintilla of evidence" to create a genuine issue of material fact as to whether there was a causal connection between his complaints and his discharge.

Even assuming that Southmayd could establish a *prima facie* case of retaliation, the court finds that Apria is entitled to summary judgment on Southmayd's circumstantial retaliation claim. As noted above, Southmayd has not shown a genuine issue of material fact concerning the validity of Apria's explanation that Southmayd was chosen for the RIF because his performance rating was lower than Miracle's and because Apria desired to retain the business that had been acquired through the THR acquisition. Under the *McDonnell Douglas* framework, therefore, Southmayd has not carried his burden of demonstrating that Apria's nondiscriminatory explanations are pretextual, and his claim for retaliatory discharge under the ADEA and THRA will be dismissed.

### 2. State Law Retaliatory Discharge

Southmayd next makes a claim under the Tennessee Public Protection Act (TPPA), Tenn. Code Ann. § 50-1-304. He also asserts a companion claim of retaliatory

discharge under Tennessee common law.  Although the two causes of action are very similar in many respects, they are not identical.

Although the TPPA and Tennessee common law both prohibit retaliatory discharge, the elements of the two causes of action are different.  To establish a claim for retaliatory discharge under the TPPA, Southmayd must show (1) his status as an employee of Apria; (2) his refusal to participate in, or remain silent about, illegal activities; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination by Apria.  *Anderson v. Standard Register Co.,* 857 S.W.2d 555, 558 (Tenn. 1993).  Under the common law cause of action for retaliatory discharge, Southmayd must show that (1) an employment-at-will relationship existed; (2) he was discharged; (3) the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in Apria's decision to discharge him was his exercise of protected rights or compliance with clear public policy.  *Crews v. Buckman Laboratories Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn.2002).  *See also Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 535 (Tenn.2002); *Mason v. Seaton*, 942 S.W.2d 470, 474 (Tenn.1997); *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 (Tenn.1997); *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn.1992); *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 556 (Tenn.1988); *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 444-45 (Tenn.1984).

As stated above, Southmayd has offered no direct evidence of a causal link in this case. Instead, Southmayd relies solely on the temporal relationship between his complaints about THR's practices and his discharge. This, standing alone, will not support an inference that the protected activity and termination were causally related. Since Southmayd has failed to present "more than a scintilla of evidence" to create a genuine issue of material fact as to whether there was a causal connection between his complaints and his termination, his claims for retaliatory discharge under Tennessee law will also be dismissed.

### 3. Retaliatory Failure to Rehire

Finally, Southmayd alleges that Apria failed to consider him for rehire in retaliation for engaging in protected activities. Since Southmayd has not presented direct evidence that Apria's decision not to rehire him was in retaliation for filing his EEOC charge and this lawsuit, his claim will be analyzed under the *McDonnell Douglas* test. Apria concedes that Southmayd can establish that he engaged in protected activity and that he suffered an adverse employment action. However, Apria argues that Southmayd has not shown that the relevant decision maker at Apria had knowledge of his protected activity and cannot show the requisite causal connection between his protected activity and Apria's refusal to rehire him. The court disagrees.

Southmayd filed his charge of discrimination with the EEOC in November 2003, and subsequently initiated this lawsuit on May 10, 2004. Southmayd applied for the reopened positions of branch manager in September 2004. The record shows that after

Southmayd engaged in the protected activity of filing his EEOC charge and this lawsuit, Apria failed/refused to rehire him for the open branch manager positions.

Miracle was the sole decision-maker for the open positions. Miracle testified that he did not even consider Southmayd for rehire, although he admitted that Southmayd met all of the qualifications for the positions. Miracle testified that he did not hire Southmayd based on his knowledge of Southmayd's previous performance as a branch manager at Apria. Specifically, Miracle testified that it was his opinion that Southmayd was a mediocre branch manager based on facts Miracle learned after taking over the Knoxville branch from Southmayd in February 2003. Miracle further testified that he was not aware of Apria's policy giving laid-off employees preference in rehiring. In his deposition, Miracle was equivocal about when he learned that a lawsuit had been filed against Apria. Early in his deposition, Miracle testified that he did not learn about the lawsuit until May or June 2005; however, later in his deposition, Miracle admitted that he may have been aware of Southmayd's lawsuit at the time he considered applicants for the reopened branch manager position in Knoxville. Moreover, prior to his termination in the RIF, Southmayd had been offered the position of manager for the Nashville branch by Thomas Bradley, Apria's regional operations manager. Taking these facts in a light most favorable to Southmayd, a jury could reasonably find that Apria failed/refused to rehire Southmayd for the open branch manager positions in retaliation for filing an EEOC charge and lawsuit in this matter.

Southmayd has presented evidence which establishes a question of fact regarding Miracle's motivation and knowledge of Southmayd's charge of discrimination and lawsuit at the time he decided not to consider plaintiff for rehire.  Since the trial court is not to resolve issues of fact in deciding a motion for summary judgment, the determination of whether the circumstances give rise to an inference of retaliation "must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a retaliatory motive.  It is not the province of the summary judgment court itself to decide what inferences should be drawn." *Mason,* 942 S.W.2d at 473.   At this juncture in the proceedings, Southmayd has presented more than a scintilla of evidence to support his claim that retaliation may have  motivated Apria's decision not to consider him for the reopened branch manager positions in September 2004.  There are genuine issues as to material facts in dispute in this case in regard to Southmayd's failure to rehire claim which should be decided by a jury.   *Street v. J.C. Bradford Co.*, 886 F.2d 1472 (6th Cir. 1989); *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991); *White v. Federal Exp. Corp.*, 729 F. Supp. 1536, 1553 (E.D. Va. 1990).  Therefore, summary judgment is not appropriate.


## **Conclusion**

For the reasons stated above, defendant Apria Healthcare, Inc.,'s motion for summary judgment [Doc. 36] is **GRANTED IN PART AND DENIED IN PART**; the motion is **GRANTED** as to Southmayd's claims of age discrimination under the the ADEA and the THRA; the motion is also **GRANTED** as to Southmayd's claims of retaliatory discharge

under the ADEA, the THRA, and Tennessee law; and the motion is **DENIED** as to Southmayd's claim of retaliation for Apria's failure/refusal to rehire him in September 2004. The parties will prepare the case for trial.

**IT IS SO ORDERED.**

**ENTER:**


_____s/ Thomas W. Phillips_____
United States District Judge